JACKSON, *ex dem.* TEED AND OTHERS, *against*
HALSTEAD.

One assigned a lease; and then took a re-assignment, with certain exceptions, both the assignment and re-assignment being endorsed on the lease, and afterwards assigned the whole; under which last assignment, the assignee claimed the whole, in ejectment against one claiming, and in possession under the exception. On the plaintiff's producing the lease in evidence, with the assignment and re-assignment thus endorsed, the genuineness of the latter being established; *held*, that the assignment, when thus taken in connection with the re-assignment, might be read without being proved by a subscribing witness; and that the one taking under the re-assignment, which was in nature of a sub-lease, and all claiming under him, were estopped to question the genuineness of the assignment.

EJECTMENT, for part of farm No 14, and a part of Delaware river adjoining it, in lot No. 41, in the Hardenburgh patent, tried at the Delaware circuit, June 7, 1824, before WALWORTH, C. Judge.

On the trial, the plaintiff deduced a title by a lease in fee, dated January 1, 1793, from one Desbroses to Ingersol, who assigned the lease to Levi Palmer, November 4th, 1801. This lease was of certain premises, described as beginning at the southerly side of the Delaware river, at a birch tree; and running several courses round certain land on the southerly side of the river, to the river, at a tree standing on the low lands, west from the place of beginning, " and thence easterly, up said river, as it winds and turns, (*including the same,*) to the place of beginning, containing 130 acres of land." Under these words, the plaintiff claimed a small island in the Delaware, opposite the shore which was confessedly included; and proposed to show that the defendant was in possession of this island; but the Judge overruled the evidence.

Palmer was the common source under which both parties claimed title; and the plaintiff proved an assignment

To constitute an adverse possession of land, not included in a grant of it, so as to avoid a conveyance by the real owner, there must be a *pedis possessio* or substantial enclosure; but the enclosure need not be by an artificial fence, or other erection. A river, a mountain, or continued ledge of rocks, &c. or other natural obstruction, sufficient to prevent the intrusion of cattle, is enough.

A grant of a river, *eo nomine*, will not pass the soil of the river, or an island within it.

If one grant *aquam suam*, the soil will not pass; but only the piscary within the water, according to Co. Litt. 4, *b*, and Com. Dig. *Grant*, (E. 5.)

of the lease from him (Palmer) to Jennings, dated October 17th, 1811, who devised one-half of all his real estate to his wife in fee, and the other half to her for life, remainder over in fee. She intermarried with Teed, and they were both named as lessors of the plaintiff.

The defendant, in order to deduce a title from Palmer to himself, relied on an assignment endorsed upon the lease, dated March 14th, 1806, from Palmer to Ebenezer Bennet, being before the assignment to Jennings; and a re-assignment, also endorsed on the lease, from Bennet to Palmer, dated February 12th, 1807. This re-assignment contained an exception of 8 acres and 17 rods, as sold by Bennet to Halstead, the defendant. The assignment to Bennet was not proved by the subscribing witness; and the plaintiff's counsel objected on this ground, to its being read; but the Judge held that, taken in connection with the re-assignment, it was to be considered as in proof; and it was accordingly read.

The defendant then gave in evidence a sub-lease in fee from Bennet to himself, dated April 7th, 1806, for two small lots of land, parcel of the premises contained in the original lease, describing them particularly; but the description did not include a small strip of land lying immediately on the bank of the river; though it was intended to include this; and the defendant claimed to have possessed it adversely at the time of, and so as to avoid the assignment from Palmer to Jennings.

The circumstances constituting this adverse possession are stated at large in the opinion of the Court, with such other particulars as, in connection with the above, will sufficiently elucidate the nature of the controversy, and render a farther history here unnecessary.

The Judge said he should charge that, as to the strip of land, a good adverse possession was made out; that the assignment to Jennings was, therefore, void pro tanto; that he had established a good title to the land described in the sub-lease; and that the island did not pass to Ingersol by the words of the original lease; upon which,

The plaintiff submitted to a nonsuit, with leave to move to set it aside.

ALBANY,
Oct. 1825.

Jackson
v.
Halstead.

*S. Sherwood*, now moved to set aside the nonsuit, upor the several grounds taken at the trial. As to the adverse possession relied on by the defendant, he cited *Jackson* v. *Camp*, (1 Cowen's Rep. 609, 10.)

*Talcott*, (Attorney General,) contra. To show that the descriptive words of the original lease, *including the same*, did not reach the land of the river and the island, he cited Co. Litt. 4, *b.* and Com. Dig. *Grant*, (E. 5) ; and that the assignment, from Palmer to Bennet was admissible in evidence without being proved by the subscribing witness, *Rex* v. *Inh. of Middlezoy*, (2 T. R. 43 ;) *Pearce* v. *Hooper*, (3 Taunt. 62 ;) *Betts* v. *Badger*, (12 John. Rep. 223 ;) and *Jackson* v. *Kingsley*, (17 id. 158.)

*Sherwood*, in reply, denied that the cases cited would warrant reading the assignment ; though he should not insist so much upon this objection, as that the Judge erred in excluding the island from the original lease, and in holding that an adverse possession was established.

*Curia*, per WOODWORTH, J. The plaintiff made out a title to farm number 14, as described in the leases given by Desbroses to Ingersol ; and claimed to recover of the defendant, three certain parcels alleged to be in his possession ; and described on the map annexed to the case as follows : one lot, of 6 acres, adjoining the Delaware river; one lot of 2 acres, 17 rods ; a strip of land lying between the north bounds of the last lot and the river ; and also a small island, claimed as included within the bounds of the original lease.

The defendant claimed title from the same source. On the back of the lease produced by the plaintiff, was written an assignment from Levi Palmer to Ebenezer Bennet, dated March 14th, 1806. The plaintiff objected to its introduction, unless proved by the subscribing witness. The Judge admitted it without such proof; because there was a re-assignment from Bennet to Palmer, of February 12th, 1807, also endorsed, which was not questioned. It is proper, here, to state, that the re-assignment from Bennet con

tained an exception and reservation of 8 acres, 17 rods, being the two parcels first described. As between Bennet and Palmer the acceptance of a conveyance by the latter from the former, containing a reservation of part, was an admission of the right of Bennet to the portion excepted; and Palmer, being a sub-lessee, was estopped from alleging the contrary. (Co. Litt. 352. *Rawlyns' case*, 4 Rep. 53.) Besides, the acceptance of a re-assignment, endorsed on the same paper that contained the assignment, seems to be an explicit acknowledgment of the authenticity and genuineness of the latter. It is not, therefore, admissible that Palmer, or those claiming under him, be permitted to deny the execution. The Judge was correct in receiving the evidence.

On the 17th of October, 1811, Palmer conveyed to Jennings, the premises described in the original lease, without making any exception. The lessors of the plaintiff are the representatives of Jennings. They acquired no title to the 8 acres and 17 rods.

With respect to the island, the plaintiff's right depends on the expression in the original lease. The farm demised lies on the south side of, and adjoining the river. The last course but one extends to the river; " thence up the said river as it winds and turns (*including the same*) to the place of beginning." The question is, what do these words grant? It is laid down in Co. Litt. 4, *b*, that "if a man grant *aquam suam*, the soil shall not pass; but the piscary within the water passeth therewith." The same rule is recognized in Com. Dig. *Grant*, (E. 5.) No right, then, to the island was acquired; and all testimony, as to the defendant's possession of that part of the premises in question, was properly excluded.

The plaintiff is entitled to recover the small parcel of land lying between the 2 acres and 17 rods, and the river; unless the deed from Palmer to Jennings is inoperative, in this respect, by reason of an adverse possession, at the time it was executed. The boundaries in the defendant's conveyance do not include this parcel. He cannot, therefore, rest on the ground of a good constructive possession; but must make out a *pedis possessio*, or actual occupancy, with

claim of title. The adverse possession must be marked by a substantial enclosure, and continued down, to render it available. (3 John. Rep. 234. 10 id. 477. 1 id. 156. 1 Cowen, 285.)

It appears by the defendant's testimony, that a saw mill and dam, formerly erected on the premises, have gone to decay. The commencement of the fence, near the fla. stone, designated on the map, is about one rod from the river; and leaves some ground not enclosed. But it is in proof, that the fence, at this place, is as near to the river as the wash of the floods, and the make of the ground will permit. To apply the rule so strictly as to require the fence to be placed on the very margin of the river, where it would be liable to be swept away by the rise of water, would be unnecessarily rigid; and not within the reason of the rule defining what shall constitute an adverse possession. It must be perfectly obvious, that such a location is evidence of a claim to the water's edge. With respect to the residue of the fence, it appears to have been built as near to the river as the land would permit. There is no valid objection on this ground. The fence was not continued the whole extent, to the upper corner. McGilvery says, it was discontinued in some places, where the bank, and the growth on it, of themselves, formed a sufficient obstruction to cattle; that the northerly line is a high bank, unfit for cultivation, and covered chiefly with hemlock. Kinney, the surveyor, says the upper corner of the lot was not enclosed.

From the whole of the evidence, I understand that the small parcel was enclosed by a fence on all sides, excepting on the northerly line, where it extended a part of the way only; and at that portion of the line where it did not continue, the high bank served as a substitute. For the purpose of notoriety, as well as good husbandry, this was a substantial enclosure. Why require a fence, where nature had formed a sufficient barrier, to prevent the intrusion of cattle? The defendant sufficiently marked the extent of his possession. Suppose a lot of land is bounded on the one side by a navigable river, or a continued ledge of rocks, or a mountain of difficult ascent or descent, and

that the other sides are well enclosed; would not ·this, with a claim of title, constitute an adverse possession? It certainly would; because, in such a case, everything had been done, that could reasonably be required to protect the crop, or denote exclusive occupancy. The case before us is analogous. The defendant's possession was adverse when Palmer assigned to Jennings; and so continued to the time of commencing the action.

The assignment, then, being, in relation to this parcel, void, the title never passed from Palmer; and, as he is not a lessor, the plaintiff cannot recover. Had there been a demise from him, the defendant's adverse possession would have been unavailing, as it falls short of 20 years.

I am of opinion, that the motion to set aside the nonsuit be denied.

Motion denied.