BECKER and others *vs.* VAN VALKENBURGH and others.

Where a person's entry and claim of title are not founded upon any written instrument, or any judgment or decree, he will be deemed to have possessed and occupied only so much of the lands as have been protected by a substantial inclosure, or have been usually cultivated or improved.

Where there is no claim of title founded upon a written instrument, or a judgment or decree, there must be a *pedis possessio*—an actual occupancy, or a substantial inclosure of the lands, definite, notorious and certain, to constitute an adverse possession.

But the inclosure need not be by an artificial fence, or other erection. Thus, where there was a fence on the south and west sides of the premises, and on the east and southeast sides was a ledge of rocks from 200 to 400 feet in height, but no other barrier; *held* that such ledge of rocks completed the inclosure, as much so as if an artificial fence had been constructed along that line.

Under the revised statutes, as formerly, if an adverse possession commences in the lifetime of the ancestor, it will continue to run against the heir, notwithstanding any existing disability on the part of the latter, when the right accrues to him or her.

In an action for trespass in cutting timber, the plaintiffs showed a paper title in them to the land on which the timber was cut. The defense was adverse possession. It was proved that as early as the year 1823, the defendant V., under a license from his father, who claimed the premises, entered upon them, erected a house, and made a clearing thereon. A part of the land

was then in the occupancy of B., the father of two of the plaintiffs. V.'s entry was under a claim of right, open and notorious, and in hostility to the grantors of the plaintiffs. He lived on the lot, claiming it as his own and cultivating a portion thereof, and cutting his firewood and timber therefrom. His possession and claim was continued during the lifetime of B., (who died in 1854,) and afterwards, until 1848 or 1849, the time of the alleged trespass. The plaintiffs never attempted to assert any claim to that portion of the premises on which the trespass was alleged to have occurred, until 1850 or 1851. *Held* that these facts tended to establish an *adverse possession* in V., and justified the finding of the referee in favor of the defendants.

APPEAL from a judgment entered on the report of a referee. The plaintiffs sued the defendants in trespass, for cutting and carrying off a quantity of timber from lot No. 14, in Butler and Clark's patent, in the town of Fulton, in the county of Schoharie. The defendants answered, 1st, denying the allegations of the complaint; and 2d, averring title to the close or premises on which the alleged trespass was committed, in the defendant Jacob Van Valkenburgh. It appeared, on the trial, that lot No. 14 was originally deeded by one William Zimmer to William H. Becker, the father of two of the plaintiffs. One Snyder claimed to have an interest therein originally, and occupied a part of the lot during his lifetime. After his death, Lawrence Sternburgh, his son-in-law, occupied a part of the lot. Lawrence Bouck, another son-in-law, bought out Sternbergh's interest, and remained there until his death in 1841. John L. Bouck, one of the plaintiffs, took his place, having succeeded by grant to the interest of Lawrence Bouck. William H. Becker occupied Zimmer's part from 1811 to 1834, when he died. The Strasburgh patent lay westerly of the Butler patent, and the line between lot No. 14 and the premises occupied by the father of Jacob Van Valkenburgh, one of the defendants, in the Strasburgh patent, ran through unimproved lands. As early as 1823, the father of Jacob Van Valkenburgh claimed to own the lands in dispute. In that year Jacob Van Valkenburgh built a house on the lands, between the lot occupied by his father and a ledge of rocks from 200 to 400 feet high, next to the Schoharie creek. He

Becker *v.* Van Valkenburgh.

got the timber to build his house from a strip of land westerly of this ledge of rocks. The cutting complained of by the plaintiffs was done in and about the place where the timber was got to build the house, and, at the farthest, not over four rods from where the house stands. The defendant Jacob Van Valkenburgh moved on the lot after his house was built, cleared and improved some of it, continued to get firewood and timber from it, and resided upon it at the time of the trial. The land was inclosed on the upper and south side, and the ledge of rocks was on the east; the land east of the ledge, and between that and the Schoharie creek, was flat, and was cultivated by William H. Becker, up to his death, and subsequently by the plaintiffs.

It seems, by the case, that Caty Becker, the wife of William H. Becker, conveyed, by deed, to Joseph and Garret W. Becker, two of the plaintiffs, her interest in lot No. 14, Butler's patent; but at what time, did not appear. She was examined as a witness on the trial, and stated that after the death of her husband she gave her sons Joseph and Garret the land, to go on and to occupy it, the same as if it was their own.

In the fall of 1850, one Becker, a surveyor, surveyed a part of the west line of the Butler and Clark patent. He made two surveys of the northwest corner of the patent, and fixed what he deemed to be the true west line. This line ran through a part of the defendant's barn and clearing, and the course made by him ran out into land cultivated by a brother of Jacob Van Valkenburgh. It was west of that part of the lot upon which the evidence showed the defendants to have been cutting some fifty pine logs. This cutting, however, was south of the defendant's house. The referee found that the defendant John Van Valkenburgh was a son of Jacob, and acting under his direction; that the line run by Becker, the surveyor, was the true westerly line of Butler's patent, and therefore that the plaintiff was entitled to recover, unless the defendants had been successful in establishing their ad-

verse possession; that it appeared that the line run by Becker takes in a portion of the land of the defendant Jacob Van Valkenburgh, including his dwelling house, which it was conceded the plaintiffs could not recover; and as to that portion of lot No. 14, Van Valkenburgh's adverse possession was complete.

The referee also decided that it was equally complete, from the evidence in the case, as to that portion on which the logs were cut; that he was bound to regard the ledge of rocks as completing the inclosure, as much so as if the fence had been constructed along them; that no man with such a boundary to his possession would regard any artificial fence as necessary; that if the line run by Becker was the true line, the plaintiffs and their grantors had slept upon their rights, and could not now disturb a possession in which they had acquiesced too long. He accordingly reported in favor of the defendants.

*L. Tremain*, for the plaintiffs.

*J. I. Werner*, for the defendants.

*By the Court*, WRIGHT, J. There is but a single point in this case, viz. whether the evidence is sufficient to uphold the finding of the referee that the premises upon which the logs were cut were held adversely by one of the defendants at the time of the alleged trespass. The referee assumed that the plaintiffs had shown a proper title to lot No. 14, in what was known as the Butler or Clark patent, and that the line run by the surveyor, Becker, was the true western line of such patent. In his view, therefore, the defendants were trespassers, unless the proof established an adverse possession in Jacob Van Valkenburgh, of the lands from which the timber was taken.

The evidence, it seems to me, tended to establish an adverse possession, and justified the finding of the referee. As early as 1823, Jacob Van Valkenburgh, under a license from his father, who claimed the lands lying between lot No. 18 in the

Becker *v.* Van Valkenburgh.

Strasburgh patent and a ledge of rocks easterly thereof, entered upon such lands, erected a house and made a clearing thereon. At this time that part of the Butler patent east of this ledge of rocks, and between the ledge and the Schoharie creek, was in the occupancy of William H. Becker, the father and ancestor of two of the plaintiffs. Van Valkenburgh's entry was under a claim of right, open and notorious, and in hostility to the grantors of the plaintiffs. He lived on the lot, claiming it as his own as far east as the ledge of rocks. He cleared and cultivated a portion of it, and cut his firewood and timber from the improved part adjoining and westerly of the ledge. He erected a fence on the upper and south side of the premises, and that part which was not improved was used as a wood lot and pasture. The possession and claim was continued during the lifetime of William H. Becker, whose death occurred in 1834, and afterwards down to the time of the alleged trespass in 1848 or 1849. Van Valkenburgh occupied the premises at the time of the trial in 1852, and it was not until after Becker's survey in 1850, or 1851, that the present plaintiffs seemed ever to have attempted to assert any claim to the land westerly of the ledge of rocks. The defendant's entry and claim of title seems not to have been founded upon any written instrument, or any judgment or decree, and hence he is to be deemed to have possessed and occupied adversely only so much of the lands as have been protected by a substantial inclosure, or have been usually cultivated or improved. Where there is no claim of title founded upon a written instrument, or a judgment or decree, there must be a *pedis possessio*—an actual occupancy, or a substantial inclosure of the lands, definite, notorious and certain, to constitute adverse possession. The line traced by Becker (if the true westerly line of the Butler patent) embraced within such patent a portion of the improved land and the dwelling house and barn of Jacob Van Valkenburgh. To so much of the disputed premises, it was not pretended that Van Valkenburgh's adverse possession was incomplete. But the logs were cut some four or five rods

southeasterly of the dwelling house, and upon that part of the premises improved and lying adjoining to and west of the ledge of rocks.   The question therefore occurred, whether that part of the premises where the trespass was claimed to have been committed was protected by a substantial inclosure. Van Valkenburgh had maintained a fence on the south and west sides of the premises ; and on the east and southeast was the ledge of rocks, from 200 to 400 feet in height.   Along this ledge there was no artificial fence ; but in the view of the intelligent referee—and it is also our view—this ledge completed the inclosure, as much so as if a fence had been constructed along it.   With such a boundary to his possession, no man would regard an artificial fence as necessary.   Nature had substantially inclosed the possession on its eastern boundary. (*Jackson* v. *Halstead,* 5 *Cowen,* 216.)

It was claimed, on the argument, that the plaintiffs were reversioners, and as to them there could be no adverse possession.   The referee, in his report, regards the Beckers as reversioners ; the mother having a life estate in the premises. But there is nothing in the case, as presented to us, to show that the whole estate was not in the plaintiffs.   Indeed it appeared that the mother, after the death of her husband, had conveyed to her sons her interest in lot No. 14 ; so that if she had a life estate, at any time, in the disputed premises, she had parted with it to her sons Joseph and Grant.   But allowing the fact to be that the Beckers were reversioners, still the point is not sustainable, for the reason that the defendants' adverse possession commenced in the lifetime of William H. Becker, the ancestor and grantor of the plaintiffs.   William H. Becker became seised in 1810 ; Jacob Van Valkenburgh entered and built on the premises in 1823 ; Becker died in 1834, eleven years after the entry of the defendant Jacob Van Valkenburgh.   The statute consequently commenced running against the plaintiffs' ancestor before the creation of Caty Becker's particular estate ; and under the revised statutes, as formerly, if an adverse possession commence in the

lifetime of the ancestor it will continue to run against the heir, notwithstanding any existing disability on the part of the latter, when the right accrues to him or her. (*Fleming and wife* v. *Griswold*, 3 *Hill*, 85. *Jackson* v. *Schoonmaker*, 4 *John.* 401, 402.) The judgment rendered upon the report of the referee should be affirmed.

[ALBANY GENERAL TERM, December 6, 1858. *Harris, Wright* and *Gould*, Justices.]