JACOB SCHOLLE *et al.*, Individually and as Executors of Abraham Scholle, Deceased, Respondents, *v.* THE MAYOR OF THE CITY OF NEW YORK.

*Supreme Court, First Department, General Term, July 9, 1889.*

1. *Evidence. Boundary.*—The court in an action of trespass, where the boundary comes in question, may accept the testimony of living witnesses, as more satisfactory than a map made at the instance of the defendant.

2. *Same. Map.*—Whether such map is competent evidence in favor of the defendant, is doubtful.

3. *Adverse possession.*—The fact that the premises in question were protected by a substantial inclosure during plaintiff's grantor's occupancy, from 1831 to 1852, is insufficient to make out adverse possession.

Appeal from a judgment in favor of the plaintiff upon the trial of an action of trespass, on the decision of the court.

*David J. Dean*, for appellant.

*Alexander B. Johnson*, for respondents.

BARTLETT, J.—This action is brought to recover for an alleged trespass committed by the defendants in entering upon certain premises on the west side of Fifth avenue, between One Hundred and Thirty-seventh street and One Hundred and Thirty-eighth street, in the city of New York, and removing therefrom and destroying a fence which enclosed the property.

The plaintiffs proved their possession of the premises under a claim of ownership. The entry and the removal of the fence by the defendants were admitted. These acts could only be justified by showing that the title to the land was in the defendants. This they sought to do by proof that the property was situated in the tide-way of the Harlem river, and hence passed to the city of New York, under the Dongan Charter of 1686. Mayor *v.* Hart, 95 N. Y. 443. But the plaintiffs introduced evidence to the contrary, tending to show that the ordinary line of high water was originally east of the premises to which this suit relates.

On this issue, the learned trial judge held with the plaintiffs, and we discover nothing in the record which should lead us to interfere with his finding.

There is no evidence in the case going back to the time of the Dongan charter, to show us where the ordinary high water mark of the Harlem river was in 1686. The earliest proof in this record as to the actual location of the line of high water near the property in question is furnished by what is known as a Randall map, which was made for the city by a surveyor named John Randall, Jr., and was filed in the office of the street commissioner in or before the year 1821. The particular sheet of this map which embraces the property in dispute is dated May 18, 1819. It shows a pink line, separating an area on the west, colored yellow, from

an area on the east, colored blue. Both the yellow portion and the blue portion of the map bear symbols which are evidently intended to indicate the presence of grass. There are no words on the map to show what line, if any, was intended to represent the high water mark of the Harlem river; but Mr. Silas Ludlam, an old and experienced surveyer, testified that the pink line, which has been mentioned, divided the high grass, and the low grass, and showed the limit of high water on the map.

To confirm the correctness of the Randall map, the defendants proved by another surveyor, who made a survey of the upper part of New York island in 1886 for the purpose of locating the ordinary high-water line, that after the completion of his work he compared the results with the lines shown on the Randall map and found that those indicating high water mark were almost identical.

If the pink line on the Randall map represents the actual location of the original line of ordinary high water on the Harlem, the property in question must be within the former tide-way. But the trial judge preferred to rely upon the testimony of living witnesses rather than upon the map; and indeed some doubt may well be entertained as to the competency of this map as evidence in favor of the defendants, in view of the fact that it was prepared at the instance of the very municipal corporation which now puts it forward as the main foundation for the claim of title asserted in the present litigation in its behalf.

None of the witnesses called on the trial could recollect the *locus in quo* as far back as 1821, the year in which the Randall map appears to have been filed; but Walter Brady, a witness for the plaintiffs, remembered the locality as long ago as 1831, when Mr. Charles H. Hall, who then occupied the property, caused a fresh-water pond to be constructed there. " The line of ordinary high water," says this witness, " opposite the block between One Hundred and Thirty-seventh street and One Hundred and Thirty-eighth street

was somewhere about Fifth avenue—along the line of Fifth avenue." This would leave the premises in controversy outside the tide-way. Again the witness says : " I think high water line was along by the Fifth avenue. When the tide flowed up at high water at this place at Fifth avenue there was a high embankment there against which it flowed." And the witness explained that he did not mean an artificial bank built by Mr. Hall to enclose or retain his pond, but a solid bank which existed there before any artificial construction, and against which the tide flowed at high water about on the line of Fifth avenue.

In 1831 Mr. Hall seems to have determined to devote a portion of the farm which he occupied to the purpose of a pleasure garden, and he then constructed the pond which has been mentioned upon the property to which this action relates. The pond was retained in part, at least, by embankments or causeways upon the east and north, and in the embankment to the east there was a wooden sluice or floodgate. According to Dr. Lewis A. Sayre, who knew the place as early as 1846, the embankment remained there until after Mr. Hall's death, which occurred in 1852. A portion of it had broken away, permitting the surplus water from the pond to overflow into the marsh beyond, and there were parts where the muskrats had eaten away a great deal of the bank.

As against the explicit testimony of the witness Brady, to the effect that the ordinary high water line of the Harlem river was east of these premises in 1831, we have nothing but the statement of a number of witnesses for the defence that, years afterward, they had known the tide to flow in over the locality where Hall's pond is proved to have been situated.

An inflow of this character, however, due to an artificial excavation upon the property, and to breaks in the embankment about that excavation is of little or no importance in determining the location of the original tideway. The

earliest testimony given by any living witness as to the line of ordinary high water with reference to this land shows that the tide did not usually flow over it; and the court below was justified in accepting this as more satisfactory than the inferences to be drawn from the Randal map, or from what occurred after the pond was made, and the retaining bank began to deteriorate.

The adverse possession, upon which the plaintiffs also rely, appears to us to have been sufficiently made out. There is proof enough to sustain the finding that the premises were protected by a substantial inclosure during Mr. Hall's occupancy from 1831 to 1852. See The Trustees of East Hampton *v.* Kirk, 84 N. Y. 215.

The judgment below should be affirmed with costs.

Van BRUNT, Ch. J., and MACOMBER, J., concur.