## SANDERS v. RIEDINGER et al.

(Supreme Court, Appellate Division, Second Department.  May 24, 1898.)

1. ADVERSE POSSESSION—NECESSITY OF INCLOSURE.
    In order to support an adverse possession of real property under the statute, it is not necessary that it should be fenced on every side.  A natural barrier, such as a river, on one side, the other sides being inclosed, is sufficient.

2. SAME.
    Nor is there any necessity for fencing it off from adjoining property owned by the same person who makes the claim, but the two parcels may be fenced in together as one inclosure.

3. SAME—PRESUMPTIONS.
    Where one has entered upon lands the legal title to which is shown to have been in another, it will be assumed, in the absence of proof, that he entered in subordination to the legal title.

4. SAME—CLAIM UNDER TAX LEASE.
    A claim under a tax lease for a term of years is not adverse to the owner in fee, and will not, by lapse of time, create a valid title.

5. SAME—CLAIM UNDER QUITCLAIM.
    But the possession of one who claims adversely as grantee in fee, even though by a quitclaim deed only, from the tax tenant, is sufficient.

6. VENDOR AND PURCHASER—NOTICE.
    Actual possession of real estate is sufficient notice to a person proposing to take a conveyance thereof from a third party of the existence of any right which the person in possession is able to establish under an earlier conveyance from a former owner, even though not recorded.

7. APPEAL—OBJECTIONS NOT RAISED BELOW.
    In an action involving the title to real property, a witness testified to the execution and delivery of a "deed" thereof, and no attempt was made on cross-examination to learn its nature or terms.  *Held*, that it was too late on appeal to criticise the testimony as failing to show a conveyance in fee, that being the ordinary sense in which the word "deed" is popularly employed.

Appeal from trial term.

Action by Joshua C. Sanders against Emilie Riedinger and others. From a judgment in favor of defendants, and from an order denying a motion for a new trial, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

James M. Hunt, for appellant.

Norman A. Lawlor, for respondents.

CULLEN, J. This action is in ejectment to recover a lot of land situate at Williamsbridge, formerly in the county of Westchester, now in that of New York. The answer denies the plaintiff's title, and sets up as affirmative defenses that, at the time of the grant to the plaintiff, the premises were in the actual possession of the defendants, claiming title thereto adverse to the plaintiff's grantor, and also that such adverse possession had been held by the defendants and their grantors for upward of 20 years prior to the commencement of the action. The evidence on the trial showed that Duncan S. Fowler became the owner of the lot in dispute on July 18, 1856. Fowler died September 16, 1864, leaving a will, by which he devised the remainder of his estate (which included this lot, if Fowler then owned it) to his grandsons, William H. F. Heustis and Emory J. Heustis. William was born September 13, 1855, and Emory in June, 1858. Emory J. Heustis died April 4, 1884, intestate as to his realty, leaving his father, Gilbert Heustis, and his brother, William, his only heirs at law. On October 24, 1893, Gilbert Heustis conveyed to William his interest in the lot. On November 2, 1893, William Heustis conveyed the lot to the plaintiff. Thus, the plaintiff established his record title to the premises.

The evidence on the part of the defendants tended to show that, in the latter part of the 50's, one Peter Briggs, Jr., who was the owner of four adjoining lots to the west, was in possession of the lot in dispute. All the lots abutted on the Bronx river. The four lots were inclosed as a single parcel, the Bronx bounding it on one side, the other three sides being fenced. Briggs had a factory on the premises, though apparently the building was not on the disputed lot. The lot was used as a place for empty boxes and barrels that came from the factory, and also as a driveway to the factory. Work was stopped in the factory in 1860, but Briggs continued in possession of the premises until his conveyance to the original defendant, August Riedinger. In February, 1862, the lot was sold for unpaid taxes by the county treasurer of Westchester county, to Briggs, for the term of 1,000 years. A conveyance was executed by the county treasurer on this sale on February 11, 1863, which was recorded on the same day in the register's office of the county. In July, 1865, Peter Briggs, Jr., executed the following conveyance of the lot in dispute:

"Know all men by these presents, that I, Peter Briggs, Jr., of the town and county of Westchester, and state of New York, for and in consideration of the sum of one dollar to me in hand paid by August T. Riedinger, of the city and county of New York, do hereby assign, transfer, and set over unto the said Au-

gust T. Riedinger, and to his heirs and assigns, forever, all my right, title, and interest in and to a certain lot of land, described in a certain lease made and executed by Gilbert S. Lyon, county treasurer of the county of Westchester, to Peter Briggs, Jr., dated February 11, 1863, and recorded in the office of the register of the county of Westchester, in Liber 491 of Deeds, page 158, &c., February 11, 1863, at 30 minutes past 12 o'clock p. m.

"In witness whereof, I have hereunto set my hand and seal, this 17th day of July, A. D. 1865.                                        Peter Briggs, Jr. [L. S.]"

On July 28, 1865, Briggs and his wife, for consideration of $800, conveyed to August T. Riedinger, by warranty deed, the adjacent four lots to the west. Under these conveyances, Riedinger entered into possession of the premises, and remained in occupation of them until his death, which occurred subsequent to the commencement of this action. During that period, the premises were inclosed in the same manner as they had been during the occupation of Briggs; that is to say, fences on three sides, and the river on the fourth. The premises were occupied by Riedinger as his homestead, the lot in dispute being cultivated and planted. There was also evidence given on the part of the defendants by a witness named Bedenberger, by which the defendants sought to prove that Duncan S. Fowler, between 1863 and 1865, conveyed the lot in controversy to Briggs by a deed which was not recorded, and has since been lost. In rebuttal, the plaintiff gave proof of admissions by Riedinger to the effect that he held the disputed lot under a lease, and also testimony given by him in proceedings taken by the city of New York to condemn the water rights of riparian owners in the Bronx river, to substantially the same effect. The first trial of this action was had during Riedinger's lifetime. On that trial he denied making the admissions or giving the testimony ascribed to him. On this trial the case was sent to the jury on two questions,—that of adverse possession, and that of the conveyance from Fowler to Briggs; and the second question the jury was directed to answer specifically. The jury rendered a general verdict for the defendants, and answered in the affirmative the question: "Did Duncan S. Fowler, before July, 1865, make, execute, and deliver to Peter Briggs a deed, conveying to him lot '145 A'?" From the judgment entered on that verdict, this appeal is taken.

We think there can be no question that the occupation by the defendants and their predecessors in title, so far as its physical attributes are concerned, was sufficient to support adverse possession under the statute. It was not necessary that the property should be fenced on every side. A natural barrier on one side, the other sides being inclosed, is enough under the statute. Town of East Hampton v. Kirk, 84 N. Y. 215; Jackson v. Halstead, 5 Cow. 216; Becker v. Van Valkenburgh, 29 Barb. 319. Nor do we think there is any force in the point that there was no fence between the disputed lot and the other part of the defendants' premises. The appellant relies on the authority of Doolittle v. Tice, 41 Barb. 181. There is to be found in the opinion in that case, in reference to the inclosure required by the statute, the following sentence: "It must be an inclosure of the lot alone, upon the lines claimed by the party, and not embracing premises adjoining, extending in part

a great distance from the lines." But this must be construed with reference to the subject-matter then before the court. In that case the adjoining premises were neither the property of nor in the possession of the defendant, but belonged to and were occupied by a third person, and there was no fence or barrier between such lands and the lands claimed to be held adversely. It was held that it was insufficient, to constitute an adverse possession, that the property should be inclosed in connection with adjoining lands of another owner. But that is a very different question from inclosing lands in connection with other lands of the occupant. Many times, if not in the majority of cases, the question of adverse possession arises with reference to a disputed boundary line. If in such cases it were necessary, to constitute a good statutory possession, that there should be a fence on the true line, so as to separate the property in dispute from the remainder of the defendant's premises, the defense of adverse possession could rarely prevail. If such a fence were erected, we should regard it as almost conclusive that the defendant knew his true line, and was not entitled to anything beyond it.

The serious question, as to the sufficiency of the evidence to justify the submission of the defense of adverse possession to the jury, relates to the character of the title or claim of title under which the defendants and their predecessors occupied the disputed premises. There is nothing to show under what claim Briggs originally entered upon this lot. In the absence of proof on the subject, it must be assumed that he entered in subordination to the legal title, which was in Fowler. Hammond v. Zehner, 21 N. Y. 118; Stevens v. Hauser, 39 N. Y. 304. A witness who worked in the factory during the time that Briggs maintained it testified: "Briggs was in possession of that property from late in the fifties until Mr. Riedinger took possession. He claimed it." This testimony is of a very indefinite character. It is not stated when Briggs claimed the premises. If made after he received the tax lease, it may well be referred to his rights under that lease; and it is settled by authority that a claim under a tax lease for a term of years is not adverse to the owner in fee, and will not by lapse of time create a valid title. Bedell v. Shaw, 59 N. Y. 46; Doherty v. Matsell, 119 N. Y. 646, 23 N. E. 994. We should therefore be inclined to the opinion that the possession of Briggs was not adverse to plaintiff's predecessor in title.

We now come to the consideration of the conveyance from Briggs to Riedinger. We think it is a quitclaim deed. It does not purport to transfer merely Briggs' interest under the lease, but all his right, title, and interest whatever to the land, reference being made to the lease solely for the purpose of describing the land conveyed. The words "assign, transfer, and set over" are sufficient to convey the lands described in a deed containing those words. Fash v. Blake, 38 Ill. 367. "As other modes of conveyance operate equally as grants, any words showing the intention of the parties to convey would be sufficient." 4 Kent, Comm. 492. See, also, Wilhelm v. Wilken, 149 N. Y. 447, 44 N. E. 82. Now, while the

possession of the holder of the tax lease could not be adverse to the owner in fee, the possession of a grantee in fee from the tax tenant would be adverse. Sands v. Hughes, 53 N. Y. 287. But it is claimed, on the authority of Doherty v. Matsell, supra, that a different rule prevails where the tenant under the tax lease conveys only by quitclaim. In that case one Matsell entered into possession of the premises under a tax lease. . Thereafter he quitclaimed the premises to one Mickle, and at the same time assigned to him the tax lease and its covenants. Subsequently, he resumed possession of the premises, but apparently without any conveyance from Mickle. At a still later period he conveyed the premises to his son. It was held that the possession of the premises by the elder Matsell and by Mickle was not adverse, but under the tax lease. It is to be borne in mind, however, that the referee before whom the case was tried found, as a matter of fact, that the possession of the elder Matsell and Mickle was under the tax lease, and under no other claim of title. The question therefore before the court of appeals was not whether, as a matter of law, the possession was of the character found, but whether the evidence was sufficient to support the finding of fact by the referee. In the present case the situation is reversed. The jury has decided, as a matter of fact, that Riedinger's possession was not as tax tenant, but adverse to the owner in fee; and the question is whether there was any evidence to authorize that finding. That a quitclaim deed may be a sufficient claim of title upon which to found an adverse possession, I think, results from the decision in Wilhelm v. Wilken, supra. In that case it was held that a grantee for value, under a quitclaim deed, did not acquire merely the interest of his grantor, but a valid title as against the grantee under a prior unrecorded deed. The testimony of the original defendant, taken on the first trial, was to the effect that his agreement was for the purchase of the whole premises; that he entered thereon believing he was the owner in fee; and that he always claimed them. The evidence as to Riedinger's admissions concerning his tenure of the premises tended to contradict this testimony, but its effect was simply to raise a dispute of fact which it was for the jury to determine. We are therefore of opinion, with some hesitation, that the evidence was sufficient to warrant the finding of the jury.

In connection with this branch of the case it is proper to notice certain exceptions taken by the plaintiff to the ruling of the trial court. As the plaintiff's counsel has neither in his brief nor on the argument pressed any of these exceptions upon us, except the one to the refusal to direct a verdict in his favor, our notice may be brief. The testimony of the deceased Riedinger on the previous trial was, under section 830 of the Code of Civil Procedure, subject to any legal objections that might be taken. I cannot find that any of the questions objected to were answered; at least, there is nothing in the record before us to show that fact. There are in the testimony, which is in narrative form, statements of the character of that objected to; but it does not appear that it was given

in answer to the questions, nor was any motion made to strike the testimony out.

If there was no adverse possession by Briggs, then the charge of the court, to which the plaintiff excepted, that 20 years' adverse possession by the defendants or their predecessor, under a claim of ownership for over 20 years, would vest in them a good title, was erroneous, because the plaintiff's grantor was an infant at the time that Riedinger entered. Howell v. Leavitt, 95 N. Y. 617; Darrow v. Calkins, 154 N. Y. 503, 49 N. E. 61. But the error was harmless. The court instructed the jury that possession under the tax lease was not adverse. The adverse possession of the defendants, though it did not bar the title of the plaintiff's grantor, rendered the deed to the plaintiff void. 1 Rev. St. p. 739, § 147; Pearce v. Moore, 114 N. Y. 256, 21 N. E. 419. Nor can the question discussed (Crary v. Goodman, 22 N. Y. 170) be material here. Under the facts of this case, the defendants' possession was either adverse for all purposes, or not adverse at all.

If the evidence was sufficient to justify the jury in finding that the plaintiff's predecessor in title (Duncan S. Fowler) conveyed the lot to Briggs, then the plaintiff acquired no right to the premises in dispute, and the title was vested in the defendants. The fact that the deed was not recorded is immaterial, for the defendant's occupation of the premises was sufficient notice to the plaintiff of all the former's rights. Phelan v. Brady, 119 N. Y. 587, 23 N. E. 1109. As the jury has specifically found that this conveyance was made, the finding, if properly made, cures any error that may have been committed in the disposition of the defense of adverse possession. A disinterested witness testified to the execution and delivery of this deed. Criticisms are made as to the improbability of his story, but those criticisms were for the jury; and we cannot say that, as matter of law, the story was incredible or so improbable as to justify us in interfering with the verdict. The question then occurs as to the sufficiency of the testimony to establish the lost deed. The witness testified to a deed being brought to him by Fowler and Briggs; that the name of Fowler was subscribed to it; that it was a deed of the lot in suit; and that it was delivered to the witness. The witness did not know Fowler's signature, but the fact that Fowler was present when the deed was brought was sufficient to warrant the presumption that the signature was genuine. Further, he testified that the deed was acknowledged before Adee, a justice of the peace, whose signature he knew. It is objected that the witness' statement as to the contents of the deed was not sufficient; that he did not state the date nor consideraton, nor whether it was for a term of years, or in fee. The date and consideration are immaterial. It is true that, technically, a conveyance in fee is not necessary to constitute a deed. At common law a deed is "a writing sealed and delivered by the parties," but, in ordinary language, the term is used in a much more limited and restricted sense, as a conveyance of the fee of land. Neither a mortgage nor a lease under seal is usually spoken of as a "deed."

Devl. Deeds, § 5. The best evidence of the ordinary understanding of the term appears in the present record. The record was prepared by the plaintiff's counsel, and the conveyances through which the plaintiff traces title are not set forth in full, but in lieu thereof the statement: Deed from blank to blank, bearing date blank, conveying premises in dispute. There is not to be found in the record a statement of what or how great the interest granted by these conveyances was; yet, of course, we assume that they were grants of the fee. The witness was allowed to testify without objection that the instrument was a deed of the lot in suit. No attempt was made to learn from the witness the nature or terms of the grant; nor was the point raised on the trial that the contents of the instrument had been insufficiently given. It is evident that both parties understood a deed to mean a conveyance of the fee, and we think this criticism now comes too late. On the whole, we are of opinion that the judgment should be affirmed.

Judgment and order affirmed, with costs. All concur.