## DE LANCEY v. WELLBROCK et al.

(Circuit Court, S. D. New York. January 9, 1902.)

1. BOUNDARY—LAND BELOW HIGH-WATER MARK.

The inshore boundary of a grant of a strip of land below high-water mark, 400 feet wide, changes with the high-water mark, the shifting of the shore being from natural causes.

**2. GRANT OF LAND BELOW HIGH-WATER MARK.**
   The state, having granted in fee a strip of land under water, extending out 400 feet from high-water mark, cannot thereafter give another the right to erect a public dock thereon.

At Law.

An action for ejectment to recover the possession of a strip of land under water in front of uplands of the defendants Wellbrock at City Island, in the city of New York, and extending out about 400 feet from high-water mark. The premises are situated under the waters of Long Island Sound, adjacent to Minneford's, now called City, Island, and are part of a large tract which extends 400 feet from high-water mark outward and under the waters of the sound on the east, west, and south sides of the island. This tract of land under water was granted by the English crown to Benjamin Palmer, his heirs and assigns, by royal patent dated May 27, 1763, upon the tenure of free and common socage and upon the express condition that he pay to the said crown or its successors yearly, forever, a certain rent. At the time of this grant Benjamin Palmer was the owner of the entire upland of the island. The colonial assembly, and afterwards the legislature of the state of New York, the people having succeeded to the rights of the crown, passed a number of acts directing the grantees of lands chargeable with perpetual rents to redeem from their defaults, and, in case of their failure to do so, declaring that such lands should be sold by reason of such nonpayment. By chapter 222 of the Laws of 1819 the lands so forfeited were directed to be sold by the comptroller of the state of New York. Under this act the lands were sold on March 26, 1826, but the deed was not delivered until April 5, 1836, when the comptroller duly transferred by patent the said premises about City Island to Elias D. Hunter, who was plaintiff's ancestor and devisor. See De Lancey v. Piepgras, 138 N. Y. 26, 33 N. E. 822, and Same v. Hawkins, 23 App. Div. 8, 49 N. Y. Supp. 469. In 1884 the defendants Wellbrock procured a grant from the state for the premises under water opposite uplands owned by them upon which they erected a public dock or wharf extending about 350 feet into the waters of Long Island Sound. These premises, the subject of this action, are a part of the strip of land under water contained in the Palmer patent, and the dock or wharf so erected upon the premises by the defendants Wellbrock was open to the public upon payment of the usual rates for wharfage.

Walter D. Edmonds, for plaintiff.
George F. Martens and Gratz Nathan, for defendants Wellbrock.
John Hunter, Jr., for defendants Hunter.

LACOMBE, Circuit Judge (after stating the facts as above). I have taken into consideration the various authorities which have been cited,—the earlier cases concerning this City Island property,—and reached a conclusion as to the disposition to be made of the case. Really, there is no question for the jury here. There is no disputed issue of fact. There might be some dispute as to what the facts implied or what legal conclusion the facts called for, but what the facts are is not really in dispute here.

The first question that comes up is as to the extent of the grant originally to Palmer, and subsequently, by sale of the comptroller, passing to the predecessors of the plaintiff. Of course, it is a well-known principle that where courses and distances are given in general terms, with quantities and so on, and the deed is accompanied by a map with metes and bounds laid out, and the map is referred to and made practically a part of the deed itself, the map will sometimes control; but the principle, for all that, is simply the ordinary

principle of the interpretation of all written documents, that the whole must be taken into consideration; and taking the entire document in, and working it over, it is interpreted according to what the plain intent of it is found to be from an examination of all its parts. Here, despite the circumstance that the map that is recited, and is referred to again in the deed itself in the conveying clause, has distances which are varying, the entire body of the deed—the deed and map together—leaves in my mind no doubt at all as to the plain meaning of what the crown at that time undertook to convey. It is all controlled by the express and specific statements as to width included in it. No matter what may be said, therefore, in the deed or in the accompanying map, as to metes and bounds, or anything else, it was intended to convey a strip 400 feet in width in every part, stretching out from the common high-water mark around the island, except in the places where there was no grant at all.

With that construction, the next question is the location of that tract upon the soil. The inshore boundary is the common high-water mark. There is no indication of any cataclysm that has taken place, making an extraordinary change there. Whatever shifting there has been in or out of the shore line has been only gradual and normal in its character. The evidence points that way. Under those circumstances, it seems to me the rule laid down in Scratton v. Brown, 4 Barn. & C. 485, and which is approved in Trustees v. Kirk, 84 N. Y. 215, 38 Am. Rep. 505, is the rule to be applied that, where the crown grants a subject the soil between high and low water mark, that boundary shifts to such an extent as that the shore itself may shift by entirely natural causes, without any earthquake or anything extraordinary, by the operation of accretion and erosion. Thus, under the circumstances, at one time the grantee of a strip like this might gain land towards the shore, but he would not gain on the whole, because the more he gained inshore by the shifting boundary the more he would lose by his outer boundary, and he would not get any more than 400 feet. And, per contra, he might lose from the land inside, and as long as his 400-foot line did not take him beyond the ownership of the soil of the state he would not lose on the whole, because it would shift his outer line out, though he might lose even then, because there might be no place for his outer line to go. I am of the opinion, therefore, that the common high-water mark, as it stood at the time of the commencement of this suit, or thereabouts, is to be taken as the inshore boundary, from which the 400 feet are to be measured off; and, that being so, clearly the premises which are described in the complaint are within the boundary of this particular grant. That being so, the next question that arises is, what is the effect of the subsequent deed of the commissioner of the land office to Wellbrock? I have gone over these cases (De Lancey v. Piepgras, 138 N. Y. 26, 33 N. E. 822, and Same v. Hawkins, 23 App. Div. 8, 49 N. Y. Supp. 469), and it seems to me that the controlling point of view is just this: The state granted a fee. That has been held by the court of appeals. It granted a title in fee to

the land under water—that 400-foot strip—to Palmer, and again, through the comptroller's deed, to Hunter. There was an easement reserved in it,—an easement that the people possessed of navigating over it and anchoring and fishing; an easement that the state possessed over land covered with water, where the soil belonged to a private owner and the water was navigable. That also remained as an easement upon the land. It is not necessary for us to discuss here what the state might or might not have done, or might or might not have permitted to be done, in the way of exercising easement itself or authorizing anybody else. What the state undertook to do was to give, again, the fee to another person. That it could not do, in my opinion. I am referred to cases holding that a grant cannot be held void in a collateral action. But it is not necessary to declare it void. It is sufficient to declare that this deed here introduced in evidence does not convey to Mr. Wellbrock the right to maintain upon the land, the fee of which has already been granted to somebody else, the particular structure which he put up. These conclusions lead to the direction of a verdict in favor of the plaintiff.

Another point raised in the case is as to the effect upon the defendants Hunter of deed when they are out of possession of part of the property. As to that, I shall direct affirmative relief in favor of the defendants Hunter, the same as I do in favor of the plaintiff. Of course, all this is with the same proviso that was indicated in the Piepgras Case as proper to be inserted in the judgment. I will therefore deny the motion of the defendant to direct a verdict, with a separate exception on the separate grounds. I deny the motion of the defendant to exclude the defendants Hunter from any affirmative relief, with an exception to such disposition.

A verdict is directed in favor of the plaintiff and of the defendants Hunter, stating their respective titles and rights in the premises, in the ordinary form of a verdict in ejectment, for the premises described, excluding the strip which the testimony of the plaintiff shows to be without the bounds as now plotted, and inserting in the verdict the proviso and reservation contained in the patent to Palmer.