KUNIGUNDE ODE, RESPONDENT, v. THE MANHATTAN RAILWAY COMPANY AND THE METROPOLITAN ELEVATED RAILWAY COMPANY, APPELLANTS.

*Estoppel — by acquiescence in the construction of an elevated railroad — measure of the damages recoverable by an abutting owner.*

In view of the early condition of the decisions, in respect to the rights of abutting owners upon a public street, an owner will not be held by the court to be estopped from claiming the damages resulting from the construction of an elevated railroad company in front of his premises, because of an acquiescence in the construction and continued maintenance and operation of said railroad.

In order to effect an estoppel the acquiescence must be with knowledge of the wrongful acts themselves and of their injurious consequences; it must be voluntary, not the result of accident, nor of causes rendering it a physical, moral or legal necessity, and it must last for an unreasonable length of time, so that it would be inequitable, even to the wrong-doer, to enforce the peculiar remedies of

equity against him after he has been suffered to go unmolested and his conduct has been apparently acquiesced in.

Where it appears that an abutting owner intended to rely upon legal remedies in redress of his rights, and had no intention to do otherwise than to claim from the courts such remedy as he could obtain, no estoppel arises.

Where an elevated railroad has been constructed in a public street, and has created an unauthorized and illegal burden thereon, as against an abutting owner, the damages recoverable by such owner include whatever of injury or inconvenience results from the structure itself, or are incidental to its use, and proof of every kind of damage which results to the abutting owner from the operation and management of the road is admissible.

APPEAL by the defendants from a judgment entered, in the office of the clerk of the county of New York on the 17th day of June, 1889, whereby it was adjudged that the plaintiff recover of the defendants the sum of $4,982.22 for the damages which the plaintiff had sustained by reason of the construction and operation of the defendants' railroad in front of the plaintiff's premises from November 2, 1882, to the date of the findings in this action, together with costs, and that the defendants be enjoined from further maintaining or operating their railroad in front of the plaintiff's premises, unless within a period of sixty days the defendants cause the plaintiff's easement to be condemned or taken for railroad purposes, etc.

*Edward S. Rapallo* and *Brainard Tolles*, for the appellants.

*E. W. Tyler*, for the respondent.

VAN BRUNT, P. J.:

This action was brought to recover damages arising from the interference by the defendants with certain easements in South Fifth avenue, which the plaintiff claimed to enjoy as the owner of a lot abutting upon said street, and upon which street the defendants had erected an elevated railway.

The court, upon the trial, found that, subject to the rights of the city of New York and the public to use the same for the ordinary purposes of a public street, the plaintiff is the owner in fee of the easterly half of Laurens street, immediately in front of said premises. South Fifth avenue was a street which was formed by the widening of Laurens street; and it is claimed by the defendants that the main portion of their railroad structure was not situated upon the portion

of South Fifth avenue which formerly formed the easterly part of Laurens street, and upon which the court has found that the lot of the plaintiff abutted, but that, with certain exceptions specified in the findings, the structure is wholly situated, and the trains are wholly run, on that part of South Fifth avenue which constituted the westerly half of the old bed of Laurens street.

The defendants claim error on the part of the trial court, in that no recovery should have been had, because the plaintiff had acquiesced in the construction and continued maintenance and operation of the defendants' railroad, and had elected not to reclaim the specific enjoyment of the easements appurtenant to her property taken for that purpose, as found by the court; and that certain elements of damage were considered by the court and evidence received in relation thereto for which the plaintiff had no right to recover.

In respect to the first proposition, it is true that the finding of the court would be broad enough, standing by itself, to sustain the contention of the defendants; but taken in connection with the other findings in the case, and the nature of the action, and the circumstances under which it was commenced, it is clear that the learned court did not intend to find that there was any such acquiescence on the part of the plaintiff as precluded her from recovering damages for the invasion of the easements which she enjoyed as an abutting owner upon the street in which the railroad was constructed.

It is a matter of legal history that, at the time of the construction of these roads, it was the prevailing opinion that, in view of the decisions heretofore made in respect to the construction of street railways, abutting owners had no rights which these railroads need respect; and it was not until the decision of the Court of Appeals in the *Story Case* that there was any certainty that it would be finally held that any of these abutting owners had any right of action as against these railroad companies. And then even, that decision in favor of an abutting owner was pronounced by the Court of Appeals only by a majority of one. The plaintiff, therefore, in view of the condition of the law, did not resist the erection of these railroads; and because she did not suppose she had any legal rights which she could enforce, she so far acquiesced in the maintenance and operation of the railroad; but when it became evident that she

had such legal rights, proceedings were taken for the purpose of enforcing them. And, notwithstanding the decisions which have been cited, we do not think that under such circumstances any estoppel can possibly arise.

It is a familiar principle that, in order that the effect of an estoppel may be produced, the acquiescence must be with knowledge of the wrongful acts themselves, and of their injurious consequences; it must be voluntary, not the result of accident, nor of causes rendering it a physical, moral or legal necessity, and it must last for an unreasonable length of time, so that it would be inequitable, even to the wrong-doer, to enforce the peculiar remedies of equity against him after he has been suffered to go unmolested and his conduct apparently acquiesced in. And Pomeroy, in his Equity Jurisprudence (§ 817) says that what will amount to a sufficient acquiescence in any particular case must largely depend upon its own special circumstances. We are of opinion that the early condition of the decisions in respect to the rights of abutting owners, justified the delay in the commencement of the proceedings which is shown in the case at bar. And we think that all that was intended by the learned judge in the finding to which attention has been called, was that the plaintiff intended to rely upon legal remedies in redressing her wrongs, and had no intention to do otherwise than claim at the hands of the courts such remedies as she might obtain.

It is urged that the learned trial justice erred in awarding damages for injuries to the plaintiff's vault. It is true that the court found that one of the columns of the railway was placed in the sidewalk adjoining plaintiff's premises, and in front of the same, and entered into plaintiff's vault, and occupied at the bottom thereof a space about eight feet square. But it also appears by another finding that no allowance whatever of damages was made because of the bottom of the column being in the vault, because the court expressly finds that the defendants have interfered with no other property rights of the plaintiff than her easements of light, air and access, if any, in South Fifth avenue. And it appears further, by the twenty-first finding, that the easements of the plaintiff of *light, air and access* from through and in the avenue in front of plaintiff's premises are, by the maintenance and operation of the railroad, interfered with, impaired and partially destroyed to such an extent that the future

damages to the plaintiff's easements aforesaid will be $7,000, and that the fee of said real estate is by reason of the premises diminished $7,000.

It is clear from these findings that the learned judge did not take into consideration or award any damages whatever for the space occupied in the vault by the foot of the column.

The other objection made to the award for damages is the consideration of the noise, made by defendants' trains as an element of damage.

The learned trial justice found by his eighteenth finding that, in passing plaintiff's premises, engines and trains of defendants produce a loud and disagreeable noise, to the great annoyance of plaintiff and her tenants.

Although it does not clearly appear that award was made because of the annoyance caused by the noise, yet it seems that if such had been the case, it would have been no error under the principles laid down in *Drucker* v. *Manhattan Railway Company* (106 N. Y., 157), which case is cited as an authority against the proposition that an award of damages for noise caused by defendants' trains may be made.

We think, however, that the true construction of the opinion authorizes an allowance for all the evils which result to the abutting owner from the maintenance and operation of this railroad. It is the aggregation of the discomforts suffered by the abutting owner for which compensation may be granted.

It is true that the use of the street by the railways is a public use, yet it has been distinctly held in the case of *Lahr* v. *Metropolitan Railway Company* (104 N. Y., 268) that it was not a street use, and that its operation imposed upon a street an unauthorized burden, and was illegal and wholly a trespass as against abutting owners not duly compensated. And the court say that, as a logical consequence, the damages recoverable include whatever of injury or inconvenience result from the structure itself, or are incidental to its use. This rule opened the door to the proof of every injury traceable to the railroad or its operation, and it is stated to be that, "however the damage may be inflicted, provided it be effected by an unlawful use of the street, it constitutes a trespass rendering the wrong-doer liable for the consequences of his acts."

It is true that this rule did not receive the approbation of the whole court, and that a minority favored a more narrow rule of damages, but we think that the true construction which must necessarily follow the principles laid down, in view of the illegal operation of these railroads, authorizes proof of every kind of damage which results to the abutting owner from the operation and management of the roads.

Until the highest courts lay down a narrower rule apparently in conflict with the general rule pervading the proof of damages in cases of trespass, we think the more liberal measure of damages to be most in consonance with justice.

We see no reason, therefore, for interfering with the judgment, and the same must be affirmed, with costs.

BARRETT and BARTLETT, JJ., concurred.

Judgment affirmed, with costs.