BRUSH *et al. v.* MANHATTAN RY. CO. *et al.*

(*Common Pleas of New York City and County, Equity Term.* November, 1890.)

1. INJUNCTION—LACHES—ELEVATED RAILROAD — CONSTRUCTION IN STREET — DAMAGES TO ABUTTING OWNERS.

A delay of over 10 years from the construction of an elevated railroad in a street before the commencement of proceedings to enjoin its operation in front of the premises of an abutting owner, whose easements of light, air, and access it has appropriated, does not prevent the granting of the relief, as it was not definitely settled until eight years after the construction that such act and the continued operation of the road were illegal and wrongful as to abutting owners, whose only property invaded was the easement in the street.

2. SAME.

A delay of two years after the determination of the rights of abutting owners in such streets before beginning proceedings to enjoin the continued operation of the road does not bar the right to equitable relief, where complainant's non-action had no influence whatever on the maintenance and operation of the railroad.

3. SAME.

Since complainant is asking an injunction against the operation of the road to protect his easements in the street, which are strictly legal rights, the doctrine of laches on his part has no application, unless his delay has been so long-continued as to come within the provisions of the statute of limitations.

4. SAME—DAMAGES.

Where the rental value of complainant's property has greatly increased since the construction of the road, and such increase is due chiefly, if not exclusively, to the operation of the road in the immediate proximity of the property, no injury has resulted to him entitling him to relief by injunction against the continued appropriation of his easements in the street.

Action by Sarah B. Brush and another against the Manhattan Railway Company and the Metropolitan Elevated Railway Company.

*Peckham & Tyler,* (*E. W. Tyler,* of counsel,) for plaintiffs. *Davies, Short & Townsend,* (*Edward C. James,* of counsel,) for defendants.

PRYOR, J. The action is in equity, to enjoin the maintenance and operation of defendants' railway along the street in front of plaintiffs' premises, and incidentally to recover past damages caused by such maintenance and operation. *Shepard* v. *Railway Co.,* 117 N. Y. 442, 448, 23 N. E. Rep. 30; *Henderson* v. *Railroad Co.,* 78 N. Y. 423, 430. At the close of plaintiffs' case, and again on the conclusion of all the evidence, defendants moved to dismiss the complaint as a suit in equity for injunctive relief. The motion was denied, and defendants excepted; but the question presented by the motion recurs now upon the final determination of the case. The special grounds of the motion were laches on the part of the plaintiffs in instituting their action to restrain the construction and operation of the railroad, and acquiescence by plaintiffs in such construction and operation. The railroad was constructed and put in operation in front of plaintiffs' premises on Sixth avenue the 5th day of June, 1878, and was constructed and put in operation in front of plaintiffs' premises on Eighth avenue "at various times between June 1, 1878, and January 1, 1879." Plaintiffs' ancestor, owner of the properties at the time of the construction of the railroad, opposed its construction; but it is not apparent what specific measures of opposition he took, nor that he presented any formal objection to the construction and operation of the railroad. In 1885 the plaintiffs, in whom the title to the properties then resided, contributed money to the erection of an elevator in front of their premises on Eighth avenue, in connection with defendants' station, for the purpose of facilitating access to the railroad; and July 29, 1885, at a yearly rental of one dollar, leased the elevator to the railway company for a period of fifty years, the railway company covenanting "at its own expense and charge to operate said elevator for the public use during the term of said lease, to meet all trains stopping at said station on its road," etc. In fact the connection of plaintiffs with the erection and lease of the elevator was indirect, and through

the instrumentality of a corporation in which they were stockholders, but, to give full effect to defendants' contention, I assume their immediate implication in the acts alleged as operating an acquiescence in bar of injunctive relief. I own that, in view of the principles regulating the exercise of the jurisdiction to award injunctive relief, I was strongly of opinion on the argument that by laches and acquiescence plaintiffs had precluded themselves from recourse to this extraordinary remedy. But subsequent examination of the rulings of the courts of appellate as well as of original jurisdiction satisfies me that the circumstances above recited are ineffectual as a bar to injunctive relief between the parties to this litigation. In *Platt* v. *Platt*, 58 N Y. 646, the court, in applying a familiar rule, say, "Laches cannot be said to exist where a party is ignorant of his rights," and, in effect, where they are obscure or doubtful. And upon this principle a party cannot by acquiescence lose a right of the existence of which he is not aware, the requisites to estoppel by acquiescence being "knowledge or notice of the transaction, and knowledge of the party's rights." 2 Pom. Eq. Jur. §§ 817, 965. "If a party, fully cognizant of his rights, permits a public corporation to expend," etc., he will be estopped by acquiescence. *Railroad Co.* v. *Strauss*, 37 Md. 238. In *Powers* v. *Railroad Co.*, 120 N. Y. 178, 24 N. E. Rep. 295,—an action for injury to an abutting property owner from the construction and operation of defendant's railway,—the question was whether plaintiff could recover exemplary damages on the ground that defendant's wrong was willful or grossly negligent. The courts below ruled in the affirmative, but the court of appeals reversed the judgment, and for the reason that not until the decision of the *Lahr Case* in January, 1887, (104 N. Y. 268, 10 N. E. Rep. 528,) was it definitely settled that defendant's act in constructing and operating its railroad was illegal and wrongful as to abutting owners, whose only property in the street was an easement of light, air, and access. The court added that a delay of two years by defendant to institute condemnation proceedings after it was adjudged to be a trespasser "could not be held of itself such a wanton and oppressive act as to justify an award of punitive damages." Now, unless the wrong-doer be entitled to a more lenient construction of his conduct than will be accorded to the victim of the wrong, and is to be allowed immunities withheld from the suitor who asks reparation for the wrong,—a proposition which surely will not be urged in a court of equity,—it results that the same uncertainty as to the law which exempts the defendants from the full measure of liability which they would otherwise incur preserves to the plaintiffs those rights which, had they been ascertained and settled, might have been lost by laches and acquiescence. That which is insufficient to impose a penalty on the wrong-doer must be ineffectual to afflict the sufferer with a forfeiture. Plaintiffs' rights were not determined and known until January, 1887. 120 N. Y. 183, 24 N. E. Rep. 296. This action was commenced 1st June, 1889, and the delay is not so great as, of itself, to bar the plaintiff of equitable relief. It might be otherwise had defendants, in the interval between the ascertainment and the assertion of their rights by plaintiffs, incurred any obligation or expense or inconvenience on the faith that plaintiffs assented to or acquiesced in the wrong; had defendants upon such belief or supposition in any way altered their position. But this inference is justified by no evidence in the case. On the contrary, it is entirely clear that plaintiffs' non-action had no influence whatever upon the maintenance and operation of defendants' railroad.

As to the specific act of acquiescence on which the defendants rely, namely, the construction and lease of the elevator by plaintiffs, it suffices to say that, even were the act in itself operative and effectual as an acquiescence, it was transacted in 1885, two years before plaintiff's rights were ascertained and settled, (Id.,) and so does not preclude plaintiffs from a relief which they did not then know to be open and accessible to them.

Again, in the present action plaintiffs ask an injunction for the protection of legal rights, which otherwise would be without adequate security. But "the effect of delay is subject to the important limitation that it is properly confined to claims for purely equitable remedies, to which the party has no strict legal right. Where an injunction is sought in support of a strict legal right the party is entitled to it if his legal right is established. Mere delay and acquiescence will not, therefore, defeat the remedy, unless it has continued as long as the right itself." 2 Pom. Eq. Jur. § 817. Accordingly, in *Ormsby* v. *Mining Co.*, 56 N. Y. 623, the court ruled that "the doctrine of laches and acquiescence, as a bar to an action through lapse of time, finds its just application in respect to equitable rights only. As to legal rights, mere lapse of time before an action to enforce them is of no moment, unless it come up to the requirements of the statute of limitations,"—which is not the case here. *Campbell* v. *Seaman*, 63 N. Y. 568. If it do not appear that any action of the defendant has been induced by the delay, plaintiff is not estopped by the delay. *Boardman* v. *Railroad Co.*, 84 N. Y 158; *Rubber Co.* v. *Rothery*, 107 N. Y. 310, 14 N. E. Rep. 269; *Snow* v. *Williams*, 16 Hun, 468. So, of mere delay where defendant has not been prejudiced. *McMurray* v. *McMurray*, 66 N. Y. 176; *Platt* v. *Platt*, 58 N. Y. 646; *Ode* v. *Railroad Co.*, 9 N. Y. Supp. 338. So, of mere delay so long as the parties remain *in statu quo*. *Snow* v. *Williams, supra*. So, to constitute an estoppel, there must be proof that defendant relied upon the acquiescence. *Ross* v. *Railroad Co.*, 8 N. Y. Supp. 495. Finally, "a court of equity applies the rule of laches according to its own idea of right and justice. Every case is governed strictly by its own circumstances. Whether the time the negligence has subsisted is sufficient to make it effectual is a question to be resolved by the sound discretion of the court," (*Brown* v. *Buena Vista Co.*, 95 U. S. 157, 160;) and "in the exercise of that discretion they use the statute of limitations as a guide to their action," (*Coit* v. *Campbell*, 82 N.Y. 509, 514.) Applying the principles above stated to cases identical with or analogous to the present, the courts have decided that injunctive relief was not precluded by laches or acquiescence. Thus, in an action exactly similar to this, and against these defendants, the general term of the supreme court, first department, unanimously held that the right of plaintiff to assert his rights before those rights were definitely determined by the court of last resort did not operate as laches or as acquiescence to the extent of precluding him from injunctive relief. *Ode* v. *Railroad Co.*, 9 N. Y. Supp. 338; *Ross* v. *Railroad Co.*, 8 N. Y. Supp. 495; *Carter* v. *Railroad Co.*, 14 N. Y. St. Rep. 859; *Corning* v. *Iron & Nail Factory*, 40 N. Y. 202–207; *Batchelder* v. *Sanborn*, 24 N. H. 474. But the case most decisive of the question under discussion is *Snow* v. *Williams*, 16 Hun, 468. The action was by a riparian owner to restrain defendants, proprietors of a cheese factory, from discharging unwholesome and offensive substances into the stream. Plaintiff knew when the factory was built that it was the custom to discharge such substances into streams, and he made no objection when such discharges were spoken of. The factory was put in operation in the spring of 1874, during which season and that of 1875 plaintiff patronized it, and made no objection to the discharge into the stream. The action was brought in 1877. Held, that plaintiff was not estopped from maintaining the action, and the injunction issued. Upon principle and authority, therefore, I conclude that plaintiffs are not precluded from injunctive relief by laches or acquiescence.

But defendants moved to dismiss the complaint for insufficient proof of title to equitable relief, and so moved severally in respect of the premises in Sixth avenue and in Eighth avenue; and the question is, do plaintiffs show a right to enjoin the maintenance and operation of defendants' railway in front of either of their properties? It is fundamental and a familiar rule of equity jurisprudence that an injunction issues only to intercept a substantial injury, and that this extraordinary remedy will not be applied to prevent even a con-

ceded wrong if it be of trivial consequence. *People* v. *Telephone Co.*, 31 Hun, 596–604; *Blake* v. *City of Brooklyn*, 26 Barb. 301; *Attorney General* v. *Sheffield*, 3 De Gex, M. & G. 304; *MacLaury* v. *Hart*, 121 N. Y. 636–643, 24 N. E. Rep. 1013. Admitting a wrongful encroachment upon plaintiffs' easements by defendants' railway structures, and a consequent obstruction of light, air, and access, does it appear that these injuries have reduced the rental or the permanent value of plaintiffs' properties? All presumptions are against the wrong-doer, and he cannot complain that the exact amount of damage has not been proved with mathematical precision, (*Drucker* v. *Railway Co.*, 106 N. Y. 157, 12 N. E. Rep. 568;) but still it must be apparent from the evidence that he has suffered some pecuniary loss, (*Leeds* v. *Gas-Light Co.*, 90 N. Y. 26–30.) In *Newman* v. *Railroad Co.*, 118 N. Y. 619, 23 N. E. Rep. 901, the court held that for the taking of plaintiff's easement in the highway "there would be no compensation beyond a nominal sum;" that "his right to recover would rest chiefly upon proof of consequential damages;" that "his right to compensation is measured, not by the value of the easements separate from his land, but by the damages which the land sustains because of the loss of the easements;" that "the increase of value resulting from the growth of public improvements, the construction of railroads and improved means of transit, accrues to the public benefit generally, and the general appreciation of property consequent upon such improvements belongs to the property owner," and the railroad company is not to be credited with it; but that "special and peculiar advantages which property receives from the construction and operation of the road and the location of the stations" are chargeable to the owner; and that if, upon setting off these special and peculiar benefits against the injuries inflicted by the railroad, "the result is beneficial, there is no damage, and nothing can be awarded." Obviously, any enhancement of the value of property accruing from the contiguity of the railroad or the proximity of a station is a "special and peculiar" benefit, not common to the general public, just as the injurious effects of a nuisance upon adjacent properties are "special and peculiar," so as to sustain a private action, no matter how great the number of such properties so affected. What, then, is the balance of benefit and injury to plaintiffs' properties from the construction and operation of defendants' railway? Is the net result a loss or a gain in value? Have plaintiffs shown—for it is upon them to show—such a substantial injury to their properties as authorizes a court of equity to intervene with its extraordinary process of injunction?

1. As to the Sixth-Avenue property, plaintiffs produce expert evidence that the property is of less value than before the construction of the railroad; but defendants present equal evidence of the same sort that the property is of greater value since the construction of the railroad. Here is no preponderance of proof for plaintiffs. Then plaintiffs attempt to corroborate the testimony of their experts by evidence that adjacent properties in the same street have fallen in value since the railroad; but this is met and repelled by conclusive proof that still other properties in the same street, in the presence of the same railroad, have increased in value three and four hundred per cent. Again, plaintiffs give evidence that in some streets and avenues not affected by the railroad property has risen in value; but this again is overcome by proof that in some streets and avenues where the railroad runs property also has increased in value. Finally plaintiffs give evidence which might warrant the inference that their property would have been more largely enhanced in value but for the presence of the railroad, but the inference is rebutted by the conceded fact that the locality of the plaintiffs' property is of the most disreputable and repulsive character, and that this cause accounts for the slight improvement in its value. And so the evidence of the respective parties is so balanced by opposing probabilities that I cannot find that plaintiffs have

discharged themselves of the burden of proof. But an undisputed fact in the case furnishes a satisfactory solution of the problem. It appears by uncontradicted evidence,—what indeed no evidence was needed to establish,—that a certain ratio exists between the rental and the fee value of income-producing property; that they rise and fall together; that the fluctuations in the one value are responsive to the fluctuations in the other. If, then, there be evidence exhibiting the course of the rental value of the property in question before and since the railroad, such evidence furnishes an infallible criterion by which to determine the course of the fee value. Now, just such evidence is in this case, and is supplied by the plaintiffs themselves. They produce a schedule of rents collected from the property before and since the railroad. The road was opened to the public June 5, 1878, and here is plaintiff's statement of the rental value of his property for the preceding year and for the present year:

|          |   |   |   |   |   |   | 1877    | 1890    |
|----------|---|---|---|---|---|---|---------|---------|
| No. 441  | • | • | • | • | • | • | $1,500  | $1,900  |
| No. 443  | • | • | • | • | • | • | 1,500   | 2,200   |
| No. 445  | • | • | • | • | • | • | 1,500   | 2,200   |
| No. 507  | • | • | • | • | • | • | 1,800   | 2,000   |

—And thus it appears that all the Sixth-Avenue property has increased in rental value since the operation of the road from 12 to 40 per cent. The inference is irresistible that its fee value has increased in a corresponding ratio; and such, in my opinion, is the weight of the positive testimony. I conclude, therefore, that as to their Sixth-Avenue property plaintiffs have shown no injury, but the contrary rather.

2. As to the Eighth-Avenue property, the case is still more clear and conclusive. It appears by uncontradicted evidence that before the construction of the railroad in Eighth avenue plaintiffs' property there was agricultural land, wholly unimproved, and occupied only by shanties and stables. The property was built and opened for occupancy in 1887. The rent received for the year 1887 was $1,956; for 1888, $4,512.50; for 1889, $4,890; and for the first four months of 1890, $1,900, or at the rate of $5,700 for the year. The testimony of the experts as to this property shows that the lots upon which it was built were worth, at the time the elevated railroad was opened, and up to 1885, about $5,000 for the corner lot, and $3,000 for the inside lots, and that the corner lot is worth to-day about $17,500 to $20,000, and the inside lots are worth between $12,000 and $14,000. And the undisputed evidence demonstrates that this vast improvement and enormous increase in the value of plaintiffs' property are due chiefly, if not exclusively, to the operation of defendants' railroad in immediate proximity to the property; and yet I am asked to award plaintiffs thousands of dollars for injuries inflicted on this property by defendants' railroad. To my mind, the claim is untenable and unjust. Upon all the evidence, I am of opinion that plaintiffs have shown no injury entitling them to equitable relief, and it follows that the complaint must be dismissed. *Mann* v. *Fairchild,* *41 N. Y. 106; *Heywood* v. *City of Buffalo,* 14 N. Y. 534–540; *Bradley* v. *Aldrich,* 40 N. Y. 504; *Wheelock* v. *Lee,* 74 N. Y. 495; *Arnold* v. *Angell,* 62 N. Y. 508.