(94 Misc. Rep. 433)

### CARDWELL v. CLARK et al.

(Supreme Court, Trial Term, Queens County.   March, 1916.)

1. TAXATION ☞422—ASSESSMENT OF LANDS OF NONRESIDENTS—STATUTE.

Under Rev. St. pt. 1, c. 13, tit. 2, §§ 1–3, 11, 12, requiring the division of assessments into two classes, realty and personalty owned by residents, and realty owned by nonresidents, that the realty of nonresidents be placed in a separate part of the assessment roll, and that unoccupied lands belonging to nonresidents be denominated "lands of nonresidents," the assessment of lands of nonresidents, without designating them as such, in a separate part of the assessment roll, under a tract designation, as "Talfourd Lawn," was not proper, as the lands should have been placed in a separate part of the roll expressly set apart or designated for assessments against the property of nonresidents.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 687, 728; Dec. Dig. ☞422.]

2. TAXATION ☞422—ASSESSMENT OF LEASES OF NONRESIDENTS—STATUTE.

An assessment roll, beginning with a few names, lands of nonresidents under a tract designation following, then more names, then another tract, and so on, so that assessments against individuals for realty and personalty were interspersed between the assessments of realty under tract or map designation, was not a compliance with the statute.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 687, 728; Dec. Dig. ☞422.]

3. TAXATION ☞805(1)—ACTION TO CANCEL COMPTROLLER'S CONVEYANCE—STATUTE.

Tax Law (Consol. Laws, c. 60 [Laws 1896, c. 908]) § 132, providing that application or action to cancel tax conveyances made by the comptroller,

county treasurer, or county judge shall be made or brought within a year, is a statute of limitation.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1593, 1597; Dec. Dig. ☞805(1).]

4. LIMITATION OF ACTIONS ☞182(2)—PLEADING STATUTE.
A statute of limitation must be pleaded.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 676, 678; Dec. Dig. ☞182(2).]

5. PARTITION ☞39—CHANCERY JURISDICTION.
The jurisdiction of the Court of Chancery over suits for partition was so well established prior to the American Revolution that it may be regarded as inherent.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 93–96; Dec. Dig. ☞39.]

6. LANDLORD AND TENANT ☞66(1)—HOLDER OF TAX LEASE—ADVERSE POSSESSION.
The possession of a holder of a tax lease cannot be adverse to the owner of the fee.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 199–202, 206–209; Dec. Dig. ☞66(1).]

7. ADVERSE POSSESSION ☞79(3)—BUYER FROM CLAIMANT UNDER TAX LEASE—ADVERSE CHARACTER OF POSSESSION.
Where a party claiming under a tax lease contracted to sell the lots, and the buyer went into possession, his vendor giving him an assignment of the tax lease, and later a quitclaim deed purporting to convey the lots in fee, the possession under the quitclaim deed of the buyer, and his widow as his devisee, was adverse to the true owner.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 461; Dec. Dig. ☞79(3).]

8. EQUITY ☞84—LACHES—APPLICATION OF DOCTRINE.
The doctrine of laches is applicable only to cases where equity is asked to grant a purely equitable remedy, to which the party has no strict legal right.

[Ed. Note.—For other cases, see Equity, Dec. Dig. ☞84.]

9. PARTITION ☞89—ALLOWANCE FOR IMPROVEMENTS AND TAXES PAID—CLAIM FOR USE AND OCCUPATION.
In an action for partition, where no claim was made against any defendant for use and occupation, no allowance could be made in favor of those defendants who made improvements or paid taxes on the premises, or any part thereof.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 246, 251; Dec. Dig. ☞89.]

Action for partition of realty by Charles W. Cardwell against Therese G. Clark and others. Interlocutory judgment of partition between plaintiff and defendant Clark, except as to two lots in possession of an unnamed defendant, as to whom the complaint is dismissed.

Robert B. Honeyman, of New York City, for plaintiff.

Edward R. Clark, of Jamaica, for defendant Clark.

Lawrence T. Gresser, of Jamaica, and H. C. Underhill, of Brooklyn, for defendants Kaiser and another, as executors.

Leander B. Faber, of Jamaica, for defendants Macbeth.

Gillen & Weller, of Jamaica, for defendants Endlekofer and others.

Bunn & Collins, of Jamaica, for defendant Yadevaia.

Herbert A. O'Brien, of Jamaica, for defendant Grass.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

BENEDICT, J. This is an action for the partition of real property. It was tried before a jury. At the conclusion of the trial the court ruled that there were no questions of fact to be submitted to the jury and reserved decision on the questions of law.

I indicated on the trial that I thought the defendants Macbeth could make no claim to the premises under the alleged deeds from Lawrence V. Husted and Jennie Husted, and I am still of that opinion. It only remains, therefore, to consider the claims of the holders of the several tax leases.

[1] The plaintiff challenges the validity of all these leases upon the ground, among others, that the assessments upon which they were based were void, in that the property of nonresidents was not separately listed. Title 2, c. 13, pt. 1, of the Revised Statutes, as in force at the time the assessments in question were levied, prescribed the manner of making up the assessment roll. Section 1, art. 1, of said title, provided as follows:

"Every person shall be assessed in the town or ward, where he resides when the assessment is made, for all lands then owned by him within such town or ward, and occupied by him, or wholly unoccupied."

Section 2 originally read as follows:

"Land occupied by a person other than the owner may be assessed to the owner or occupant, or as nonresident lands."

As amended by Laws of 1878, c. 152, it provided:

"Lands occupied by a person other than the owner may be assessed to the occupant, as lands of nonresidents, or, if the owner resides in the county in which such lands are located, to such owner."

This amendment does not, however, affect the rights of the parties in the case at bar, because the owners of the property in question at the times of the assessments to be hereafter considered were nonresidents of Queens county.

Section 3 provided:

"Unoccupied lands, not owned by a person residing in the ward or town where the same are situated, shall be denominated 'Lands of Nonresidents,' and shall be assessed as hereinafter provided."

Article 2, after providing for the listing of all taxable inhabitants of the town or ward, as the case might be, and the quantities and values of their lands to be taxed, and the value of their taxable personal property, provided in section 11 as follows:

"The lands of nonresidents shall be designated in the same assessment roll, but in a part thereof separate from the other assessments, and in the manner prescribed in the two following sections."

Section 12 provided that if the land to be assessed be a tract subdivided into lots, or a part of which is so subdivided, the tract should be designated by its name, if it had one; otherwise, it should be stated by what lands it was bounded. This was followed by a provision that, if the assessors could obtain correct information as to the subdivisions, they should put down all the unoccupied lots owned by nonresidents by numbers alone, without the names of the owners.

The first question to be considered is whether the assessment rolls of the town of Jamaica for the years 1874, 1876, and 1884 comply with these provisions of law. Taking the assessment roll of 1884, we find that it begins with a list of names of individuals who are assessed for real property, or real and personal property. After most of the names appears the letter "R," and after some of them the letters "N R." This is followed by a list of incorporated companies assessed for real property only, and this by a list of individuals assessed for personal property only. Then follow assessments of several tracts of real property divided into lots, such tracts being designated by name or by reference to some map. To each such tract a part or section of the roll is devoted. Among them is a tract designated as "Talfourd Lawn," which included the premises involved in this ·action. In many cases in the assessment of lots on this tract, as of those in other tracts, the names of the owners are entered in the second column, the first being reserved for the date of payment; while in other cases, comparatively few in number, the words "Unknown Owner" are placed in the second column. Some of the lots are stated to have buildings upon them, so that all the property assessed under this head was, apparently, not unoccupied. The lands so assessed are in no manner designated as the lands of nonresidents. It is shown that the owners of the lots involved in this action were at the time of such assessment nonresidents of Queens county.

On the part of the plaintiff it is argued that the presence of the owner's names opposite many of the lot numbers in the assessments on Talfourd Lawn lots indicates that such lots were owned by residents, since the assessors were forbidden to use the names if the owners were nonresidents, and hence that the roll itself shows that the real property of nonresidents was not assessed separate and apart from that of residents.

On the other hand, it is urged by the defendants, who claim under the several tax leases, that the property in question was placed in a part of the roll separate from other assessments, to wit, in the part headed "Talfourd Lawn"; that the use of the names of owners in certain cases does not of itself show that such property was owned by residents; and that the burden was on the plaintiff to show that some of the persons named in the assessments upon lots in Talfourd Lawn were residents, in order that the assessment—at least as to lots assessed against "Unknown Owner," as were some of the lots in question—should be void.

Obviously the statute required the division of assessments into two classes: (1) The real and personal property owned by residents; (2) the real property owned by nonresidents. Newman v. Supervisors, 45 N. Y. 676, 678; Hilton v. Fonda, 86 N. Y. 340, 346, 347; Stewart v. Crysler, 100 N. Y. 378, 382, 3 N. E. 471. It further required that the assessments of the second class should be placed in a separate part of the roll, and that unoccupied lands belonging to nonresidents should be *denominated* "lands of nonresidents." Section 3, supra. All these provisions, taken together, strongly indicate that the section of the roll set apart for the assessments upon real property of nonresidents should have an appropriate designation or heading, indicat-

ing that the lands listed therein were assessed as property of nonresidents. In other words, the fact that lands involved in this action, being the property of nonresidents, are assessed in a separate part of the roll merely under a tract designation is not a compliance with the statute. They should have been placed in a separate part of the roll expressly set apart or designated for assessments against the property of nonresidents. Hubbell v. Weldon, Lalor's Supp. 139, 144; Hilton v. Fonda, 86 N. Y. 340, 347; Franklin v. Pearsall, 53 N. Y. Super. Ct. 271, 273. See, also, Thompson v. Burhans, 61 N. Y. 52, 64. A section of the roll was devoted to the Talfourd Lawn tract, another section to the Clarenceville tract, another to the Van Wyck tract, and so on, but none to the assessment of real property of nonresidents.

In Hilton v. Fonda, supra, the Court of Appeals, per Folger, J., said (86 N. Y. 347) that:

"Where lands in a town are unoccupied, and not owned by a person residing in the town, they are to be named 'lands of nonresidents,' and are to be assessed in still another mode."

In Franklin v. Pearsall, supra, the referee, whose opinion was adopted by the General Term of the New York Superior Court, said (53 N. Y. Super. Ct. 273):

"When lands situated in a county are owned by nonresidents, the statutes have prescribed a different course. They must (among other things) be described as 'nonresident' lands."

[2] The assessment roll of 1876 follows the same general plan as that of 1884. The assessment roll of 1874 is even more obviously in violation of the statute. It begins with a few names, then follows a tract, then more names, then another tract, and so on, so that assessments against individuals for real and personal property are interspersed between the assessments of real property under tract or map designations.

These considerations make it evident that there was no proper separation in these assessment rolls of the lands of nonresidents from the property of residents, and hence that the assessments, so far as they affected the lands involved in this action, which were at the times of such assessments owned by nonresidents of Queens county, were void. Cromwell v. MacLean, 123 N. Y. 474, 486, 487, 25 N. E. 932; Schreiber v. L. I. R. R. Co., 127 App. Div. 286, 111 N. Y. Supp. 123. In the latter of these cases the Appellate Division in the Second Department, in an opinion by Mr. Justice Gaynor, said:

"The assessment in 1900 of the tax for nonpayment of which the sale was made was void. The land was of a nonresident. The statute required that nonresident lands should be set down and assessed in a separate part of the assessment roll. Tax Laws (Laws 1896, c. 908) § 29. There being a dispute on the argument before us whether this had been done, it was agreed that the roll should be submitted to us. That has been done, and resident and nonresident lands are not separately set down and assessed in the roll, but promiscuously. The land was therefore never assessed, from which it follows that there was no jurisdiction to sell."

The case of Van Rensselaer v. Witbeck, 7 Barb. 133, 140, cannot be regarded, at the present time, as an authority to the contrary. It was

reversed by the Court of Appeals (7 N. Y. 517) although without consideration of the point here under discussion; and it has been recently disapproved, so far as it supports the doctrine that certain statutory provisions as to assessments are merely directory, by Erschler v. Lennox, 11 App. Div. 511, 516, 42 N. Y. Supp. 805. In May v. Traphagen, 139 N. Y. 478, 481, 34 N. E. 1064, 1065, the Court of Appeals said:

"That all the proceedings prescribed by the law for the assessment of land for the purposes of taxation must be substantially, if not strictly, complied with, is a well-settled and a familiar rule. * * * That which the Legislature has directed courts cannot declare immaterial."

See, also, Whitney v. Thomas, 23 N. Y. 281, 285; People ex rel. Nat. Park Bank v. Metz, 141 App. Div. 600, 604, 126 N. Y. Supp. 986; Ventriniglia v. Eichner, 155 App. Div. 236, 242, 140 N. Y. Supp. 395, reversed on question of practice 213 N. Y. 147, 107 N. E. 48.

The case of Cromwell v. Nichols, 158 N. Y. Supp. 556, affirmed 155 App. Div. 905, 139 N. Y. Supp. 1051, is not in point, as the assessment roll there under consideration differed materially from those under consideration in the case at bar.

[3-5] None of the defendants makes any claim that the right of the plaintiff and the defendant Clark to challenge the validity of the tax leases is barred by the one-year limitation provision contained in section 132 of the Tax Law, and no defendant has set up any such defense in his answer. That this provision is a statute of limitation is amply supported by authority (Meigs v. Roberts, 162 N. Y. 371, 377, 56 N. E. 838, 76 Am. St. Rep. 322; Peterson v. Martino, 210 N. Y. 412, 420, 104 N. E. 916); and it cannot therefore be taken advantage of, unless it be pleaded (Nehasane Park Ass'n v. Lloyd, 167 N. Y. 431, 437, 438, 60 N. E. 741). The cases of Bandler v. Hill, 84 Misc. Rep. 359, 370, 146 N. Y. Supp. 98, affirmed 163 App. Div. 970, 148 N. Y. Supp. 1105, and Shepard v. Kusch, 89 Misc. Rep. 112, 114, 151 N. Y. Supp. 436, 438, are not inconsistent with this conclusion, so far as the present case is concerned; for in each of those cases the party who claimed that the statute should have been pleaded was pursuing a strictly statutory remedy. The jurisdiction of the Court of Chancery over suits for partition, whatever its origin, seems to have been so well established prior to the American Revolution that it may be regarded as inherent. Freeman on Cotenancy and Partition (2d Ed.) §§ 423 and 424; Smith v. Smith, 10 Paige, 470, 473; Gallie v. Eagle, 65 Barb. 583, 587.

[6] No title has been acquired against the record owners by adverse possession; for the possession of the holder of a tax lease cannot be adverse to the owner of the fee (Sanders v. Riedinger, 30 App. Div. 277, 282, 51 N. Y. Supp. 937, affirmed on opinion below 164 N. Y. 564, 58 N. E. 1092), and there has been no possession under any other claim of title for a period of 20 years.

[7] The defendant Mary Yadevaia, as she is now called, claims lots Nos. 126 and 127. A tax lease for lot No. 126 was made to John Canning on October 4, 1857, and on the same day a similar lease covering lot No. 127 was made to Mrs. John Canning. On March 29, 1899, John Canning contracted to sell these lots for $400

to Angelo Iatovaio, later known as Yadevaia, who thereupon went into possession. Subsequently Canning gave to Iatovaio an assignment of the lease covering lot 126, and later gave him a quitclaim deed purporting to convey both lots in fee. Angelo Iatovaio, or Yadevaia, has since died, and his will, giving all his property to his wife, the defendant Mary Yadevaia, has been duly admitted to probate. Said Angelo and Mary have been in actual possession of said lots from 1899 to the present time. While Canning claimed only under a tax lease, and, as to lot No. 127, appears to have had no claim at all, the possession under the quitclaim deed aforesaid of Angelo Iatovaio, or Yadevaia, and his widow as his devisee, has been adverse to the true owner. Sands v. Hughes, 53 N. Y. 287; Sanders v. Riedinger, 30 App. Div. 277, 281, 283, 51 N. Y. Supp. 937, affirmed 164 N. Y. 564, 58 N. E. 1092. The deed under which plaintiff claims bears date October 29, 1914, and was made and delivered during such adverse possession. As to Mary Yadevaia, therefore, such deed is void under section 260 of the Real Property Law (Consol. Laws, c. 50), and plaintiff is not in a position to maintain this action as against her.

It is true that she did not in her answer plead the invalidity of the plaintiff's deed on this ground (Ten Eyck v. Witbeck, 55 App. Div. 165, 167, 66 N. Y. Supp. 921, affirmed 170 N. Y. 564, 62 N. E. 1101): but the evidence on which she relies to show it was admitted without objection based on failure to plead such defense. As to the defendant Clark, who also claims under deeds delivered during such adverse possession, defendant Yadevaia served an amended answer in which this defense is set up, which amended answer was accepted by Mrs. Clark's attorney and admission of due service given. This answer does not seem to have been served on plaintiff's attorney.

None of the other defendants in possession has shown any claim of title other than under tax leases or assignments thereof. Hence as to such others those considerations do not apply.

[8] The claim is made on the part of the defendant Endlekofer that the plaintiff has been guilty of laches. The doctrine of laches is applicable, however, only to cases where equity is asked to grant a purely equitable remedy to which the party has no strict legal right. 2 Pomeroy's Equity Jurisprudence (3d Ed.) § 817; Ode v. Manhattan Ry. Co., 56 Hun, 199, 202, 9 N. Y. Supp. 338; Pollitz v. Wabash R. R. Co., 207 N. Y. 113, 130, 100 N. E. 721). Partition, on the other hand, is a matter of right. Smith v. Smith, supra; Gallie v. Eagle, supra.

[9] No claim is made against any of the defendants for use and occupation, and hence no allowance can be made in favor of those who have made improvements or paid taxes on the premises or any part thereof. Wood v. Wood, 83 N. Y. 575, 581; Haight v. Pine, 10 App. Div. 470, 472–474, 42 N. Y. Supp. 303.

Interlocutory judgment of partition between the plaintiff and the defendant Clark will be granted, except as to lots 126 and 127, in possession of defendant Yadevaia. As to her the complaint will be dismissed, with costs, but without prejudice to an action to recover

possession of such lots, brought in the names of the grantors of the plaintiff and the defendant Clark; that is, those who had title at the commencement of adverse possession under the quitclaim deed above mentioned. Defendants' requests to find have been passed upon. Submit decision in accordance herewith, and also embodying such requests as have been found, and interlocutory judgment.